

NANCY V. ALQUIST
U. S. BANKRUPTCY JUDGE

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

| | | |
|---|---|---|
| In re: | * | |
| PETER C. ANDRESEN, | * | Case No. 01-25370-NVA |
| Debtor. | * | (Chapter 7) |
| * * * * * * | * | |
| GARY A. ROSEN, Chapter 7 Trustee, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | | Adversary No. 03-3179-NVA |
| | * | |
| DON M. WOLFE, | * | |
| Defendant. | * | |
| | * | |
| * * * * * * * * * * * * * | | |

**MEMORANDUM OF DECISION IN SUPPORT OF: (1) ORDER GRANTING MOTION TO APPROVE SETTLEMENT BETWEEN TRUSTEE AND DON M. WOLFE [33] IN ADV. PROC. 03-3179-NVA; AND (2) ORDER APPROVING SALE OF REAL PROPERTY LOCATED AT 6 POST OFFICE ROAD, SILVER SPRING MARYLAND 20910 [255]**

On December 8, 2003, Gary A Rosen, Chapter 7 Trustee (the "Trustee") in the

bankruptcy case of Peter C. Andresen ("Mr. Andresen" or the "Debtor"), initiated the instant

adversary proceeding by filing a Complaint against Don M. Wolfe ("Mr. Wolfe" or the "Defendant"), seeking to avoid a postpetition conveyance by the Debtor to Mr. Wolfe certain property of the estate. The Trustee and Mr. Wolfe have entered into a settlement agreement (the "Settlement Agreement") which will resolve the adversary proceeding and will provide a benefit to the estate (and is discussed in more detail below). On June 27, 2005, the Trustee filed a Motion to Approve Settlement [33]. The Debtor filed the only objection to the settlement.[1]

On April 8, 2005, the Trustee filed a Notice of Private Sale and Application to Compensate Broker/Sales Agent [255] (the "Sale Notice"), seeking authority to sell real property located at 6 Post Office Road, Silver Spring, Maryland 20910. The Debtor filed the only objection on April 28, 2005 [256].

On April 26, 2005, May 16, 2005, June 27, 2005, July 22, 2005, July 25, 2005, and July 26, 2005, the Court held hearings on these matters. The Court has heard the evidence, reviewed the exhibits, considered the materials submitted by the parties and has had the benefit of argument of counsel and the Debtor, who is proceeding in this case and in his bankruptcy case, *pro se*. The Court now issues this Memorandum of Decision of its findings of fact and conclusions of law in support of its Order Granting Motion to Approve Settlement and its Order Approving Sale of Real Property Located at 6 Post Office Road, Silver Spring, Maryland 20910, each of which Orders will be entered in conjunction with this Memorandum of Decision.

---

[1]    Procedurally, the Trustee filed a Notice of Settlement on December 6, 2004 [17] and an Amended Notice of Settlement on May 19, 2005 [26]. The Trustee filed his motion in support of the settlement agreement on June 27, 2005. The Debtor filed an objection to the first notice on December 27, 2004 [18] and an objection to the amended notice on May 23, 2005 [26]. Details about these pleadings are discussed more extensively below.

I.    **FACTS**

The Court finds the facts stated herein based upon an evaluation of the evidence

presented over the course of approximately six days, including the credibility of witnesses and

the inferences which the Court has found reasonable to draw from such evidence.

A.    The Parties

Mr. Andresen is the Debtor in this chapter 7 case.  The case was commenced on

December 28, 2001 by the filing of a voluntary petition under chapter 11 of the Bankruptcy

Code.  The case was converted to a case under chapter 7 on November 27, 2002.  The Debtor is a

self-employed real estate broker.  He and Mr. Wolfe have engaged in business together, and have

bought properties together, either directly or through various business entities, though Mr. Wolfe

appears to be uncertain as to how often, which properties are titled in his name, and which

business entities are involved.

B.    Business Entities

There are several business entities involved in these matters and their relevance to the

Settlement Agreement and Sale Notice will be discussed further below.  Absecon Associates is a

Maryland general partnership with a principal place of business located at 9706 Capitol View

Avenue.  Absecon Associates once owned or continues to own two parcels of real estate:

(1) property located at 6 Post Office Road, Silver Spring, Maryland 20910 (the "Post Office

Road Property"); and (2) property located at 9706 Capital View Avenue, Silver Spring,

Maryland 20910 (the "Capitol View Property").  These properties are discussed further below.

The Debtor testified that Mr. Wolfe has absolutely no interest in this partnership, but documents

admitted into evidence by both the Trustee and the Debtor indicate that Mr. Wolfe is a general

partner.  On January 15, 2001, Mr. Andresen transferred all right title and interest in the partnership to Mr. Wolfe.  On September 6, 2002, Absecon Associates transferred the Capitol View Property to Mr. Wolfe as part of its dissolution.[2]  According to the Debtor, Absecon Associates continues to own the Post Office Road Property even though the partnership was dissolved.

LH Enterprises, LLC is a Maryland limited liability company formed on June 28, 2000. The Debtor testified that he is not involved in the management of this entity but that he is a member.  He also testified that Mr. Wolfe has absolutely no interest in this company.  However, the evidence shows that Mr. Wolfe was designated as managing member of the LH Enterprises, LLC.  His signature appears on the Resolution on January 15, 2001.  Interestingly, the principal place of business of this entity is 6 Post Office Road – the Post Office Road Property owned by Absecon Associates.

C.      The Transaction

The transaction that gave rise to the adversary proceeding occurred on or about December 27, 2002, when a corporation called Abseco, Inc. purchased at public auction real property located at 8514 Leonard Drive in Montgomery County Maryland (the "Leonard Drive Property").   The sale was approved by the Circuit Court of Maryland for Montgomery County. The December 27, 2002 Deed does not identify this property by address, but the parties have testified that the Leonard Drive Property was the property purchased at auction, and the Court accepts this testimony.  Abseco, Inc. assigned its rights in the Leonard Drive Property to Mr.

---

[2]      The Trustee initiated an adversary proceeding against Mr. Wolfe to set aside the transfer of the Capitol View Property to Mr. Wolfe, however, that suit was dismissed and Mr. Wolfe has since sold the property to a third party not involved in this proceeding.

Wolfe, as substitute purchaser, and the purchase by Mr. Wolfe was also ratified by the Circuit Court in a separate proceeding.  Mr. Wolfe's testimony that he purchased the Leonard Drive Property is consistent with the language appearing in the December 27, 2002 Deed.  Mr. Andresen testified that: "I have an interest in the Leonard Drive Property because I'm the one that negotiated the purchase of that by Mr. Wolfe through a corporation."  *See* Transcript of April Hearing, p. 17, lines 11-13.  This testimony is inconsistent with the other evidence and the Debtor presented no additional corroborative evidence.

The Trustee had reason to believe that Mr. Andresen purchased the Leonard Drive Property postpetition, either directly or indirectly through a business entity under his control, without court approval, and that he subsequently transferred it to Mr. Wolfe.  He therefore commenced a *lis pendens* action in the Circuit Court and sued Mr. Wolfe to set aside that transfer.  That suit led to the instant Settlement Agreement between the Trustee and Mr. Wolfe. The Trustee agreed to dismiss the complaint and release the *lis pendens* action against the Leonard Drive Property in exchange for payment by Mr. Wolfe to the estate the amount of $10,000 and a transfer of whatever interests he may have in Absecon Associates and LH Enterprises, LLC.

D.      The Proposed Sale of the Post Office Road Property

On April 15, 2003, the Court entered an order authorizing the employment of Mr. Gould as the Trustee's real estate agent [98].  He was qualified as an expert in the field of real estate sales, after examination and without objection by the Debtor, at the hearing held July 25, 2005. Mr. Gould testified about his efforts to sell the Post Office Road Property, the poor condition of

the property, which condition was only bolstered by the Debtor's testimony on July 26, 2005 as

to water and mold damage, the fire of April 2005, and the failure of the Debtor or anyone else to

pay real estate taxes.  Both parties acknowledged that the appraisal performed by Peter Moholt

dated April 8, 2004 and admitted into evidence during the hearing held over a year ago, listed the

value of the property as $260,000.  Both Mr. Gold and the Trustee testified that the Contract of

Sale in the amount of $250,000 is the best and highest offer obtained in connection with this

property.

## II.    **PROCEDURAL HISTORY**

A summary of the procedural history in this case is necessary in order to set the

appropriate tone and to explain the necessity of numerous and extensive hearings held in these

matters.  The settlement is with the Sale Notice.  Mr. Andresen is proceeding in these matters

without the benefit of counsel, and the Court has given him every opportunity to present all of

his arguments, objections and evidence.

A.    Objections to the Settlement Agreement

As stated, the Trustee filed the Complaint against Mr. Wolfe on December 8, 2003.  The

Complaint sought to avoid an alleged postpetition transfer to Mr. Wolfe of the Leonard Drive

Property.  The Trustee and Mr. Wolfe reached a settlement, and on December 6, 2004, the

Trustee filed a Notice of Settlement of Adversary Proceeding [17].  The terms of the settlement

agreement are that Mr. Wolfe will "pay to the estate the sum of $10,000, and will transfer certain

partnership interests that he may have" to the estate.  In exchange, the Trustee will dismiss the

adversary proceeding.  Mr. Andresen filed the Debtor's Objections to Notice of Settlement of

Adversary Proceeding on December 27, 2004 [18] (the "Objection").  In the Objection, the

Debtor took issue with the facts alleged by the Trustee in the Complaint. He also asserted that the settlement payment would be used for Trustee's fees and therefore would not benefit the estate, that Mr. Wolfe did not agree to the settlement and that Mr. Wolfe has no ability or desire to transfer any partnership interests.

The Trustee filed a renewed notice of the settlement on May 19, 2005 [26]. The accompanying Motion for Approval was filed June 27, 2005 [33]. The Debtor renewed his Objections on May 23, 2005 [28] (the "Renewed Objection"). In the Renewed Objection, the Debtor asserted that:

       1.     The Trustee and counsel for Mr. Wolfe, Dean Knowles, Esq. ("Mr. Knowles") conspired to provide false information to Mr. Wolfe;

       2.     Mr. Wolfe partially performed under the Settlement Agreement before it was approved when he conveyed his partnership interest to the Trustee's nominee;

       3.     Mr. Wolfe said he had no interest in the Post Office Road Property;

       4.     Notice of the Settlement Agreement was not provided to LH Enterprises, LLC or to Absecon Associates; and

       5.     The Debtor needs more time so that the Court can appoint an attorney to pursue removal of the Trustee for illegal and fraudulent conduct and to permit the United States Trustee to complete its investigation of such conduct. See Renewed Objection [28].

     B.     Objections to the Proposed Sale

The Trustee filed an Amended Notice of Private Sale and Application to Compensate Broker/Sales Agent on April 27, 2004 [206]. The Debtor filed an Objection to Amended Notice of Sale on May 7, 2004 [209]. On May 21, 2004, the Debtor filed an Additional Objection to

Amended Notice of Sale and Motion Requesting Continuance [216].  At the hearing on this matter held June 22, 2004, the Trustee learned for the first time that the Post Office Road Property was owned by Absecon Associates and not the Debtor, despite the Debtor's claim of ownership on his Schedule of Real Property.  Based on this potential title issue, the hearing was continued so that the Trustee could investigate.  On July 2, 2004, the Trustee filed a Line informing the Court that he did not intend to go forward at that time [226].

On April 8, 2005, the Trustee renewed his request to sell the Post Office Road Property with the filing of the Sale Notice [255].  Pursuant to the Sale Notice, the Trustee requested authority to sell the Post Office Road Property for the sum of $250,000, about $10,000 less than its appraised or scheduled value.  The Trustee estimated that the estate would receive net proceeds of about $20,000.  On April 28, 2005, the Debtor filed Objections to Notice of Private Sale of 6 Post Office Rd., Etc. and Motion for Continuance [256] (the "Sale Objection").  The Debtor raised the following objections:

1.      The Post Office Road Property is not property of the estate, and the Trustee has no authority to sell it;

2.      The Trustee is fraudulently and deceptively attempting to gain control of a partnership known as Absecon Associates, the title holder of the Post Office Road Property, through the Settlement Agreement with Mr. Wolfe, a former partner of Absecon Associates;

3.      Mr. Wolfe has testified that he has no interest in the Post Office Road Property;

4.      The Capital View Property was conveyed to "Mr. Rosen's purchaser" who is associated with the proposed purchaser of the Post Office Road Property, and one or more of

-8-

these parties wrongfully seized personal property of the Debtor and others and destroyed it. They have also damaged and "trashed" the premises;

       5.    The proposed sale would not benefit the estate because all proceeds would compensate the Trustee and his agent;

       6.    The purchase price is inadequate based on a comparable property, which sold for approximately $670,000; and

       7.    The debtor, through counsel and the United States Trustee, plans to petition for removal of the Trustee, to rescind the sale of the Capitol View Property and to recover damages for theft and malicious destruction of property. *See* Sale Objection [256].

    C.    Hearings Held

The Court conducted hearings over several days on the Settlement Agreement the Sale Notice and Objections thereto.

    1.    April 26, 2005 Hearing

The following parties entered their appearance at the first hearing held April 26, 2005: the Trustee, the Debtor, and Lynn O'Brien, Esq., co-counsel for Mr. Wolfe (Ms. O'Brien substituted for Dean Knowles, Esq., who represented Mr. Wolfe during the settlement discussions and in subsequent hearings). Mr. Wolfe also was present. The Trustee began direct examination of Mr. Wolfe, but it became apparent during the questioning that Mr. Wolfe was unable to recall certain facts regarding the settlement negotiations and resulting agreement. The Trustee requested a continuance in order to call Mr. Knowles as a witness.

2.      May 16, 2005 Hearing

The second hearing on this matter was held May 16, 2005 (the "May Hearing").  The Trustee, the Debtor and Mr. Knowles appeared at the May Hearing.  Mr. Wolfe also was present.  The Trustee presented for the first time a written settlement agreement that memorialized the agreement that had been described in the Notice of December 6, 2004.  This settlement agreement was dated May 14, 2005 and differed from the deal described in the earlier Notice in one detail:  it identified specifically the "partnership interests" to be transferred by Mr. Wolfe as "any and all interest he may have, if any, in Absecon Associates and LH Enterprises, LLC" (the Court has already defined this agreement as the "Settlement Agreement").  After hearing argument from the Trustee and the Debtor, the Court continued the hearing and directed the Trustee to serve the Settlement Agreement on all parties as required by the Bankruptcy Rules.  The Court also informed all parties present that the hearing on the proposed sale of the Post Office Road Property, scheduled for a few days hence, would be rescheduled and specifically set with the next hearing on the Settlement Agreement.

3.      June 27, 2005 Hearing

At the third hearing, held June 27, 2005 (the "June Hearing"), the following parties entered their appearance:  the Debtor, the Trustee, Mr. Knowles and David Gold, Esq., counsel for the United States Trustee.  At the June Hearing, quite to the surprise of everyone involved, including counsel for Mr. Wolfe, the Debtor requested that the proceeding be dismissed because Mr. Wolfe had rescinded the Settlement Agreement.  The Debtor that Mr. Wolfe had, in the Debtor's presence, hand written a statement at the bottom of the Settlement Agreement for which the Trustee was seeking Court approval.  The handwritten statement that the Debtor testified had

-10-

been penned by Mr. Wolfe purported to rescind the Settlement Agreement with the Trustee. The Debtor testified that the reason given by Mr. Wolfe for the rescission was that misrepresentations had been made to him by his attorney. Mr. Wolfe was notably absent. Mr. Knowles attempted unsuccessfully to reach him by phone during a short recess. The Court declined to accept the document into evidence without authentication. Therefore, the Court continued the matter and asked the United States Trustee to investigate the circumstances of the purported rescission.

The Court then asked the parties about the status of the proposed sale of the Post Office Road Property. The Trustee informed the Court that the lender intended to foreclose through its stay relief proceeding if not resolved in the near future. He also made a proffer as to testimony of two witnesses, one of whom appeared at the June Hearing under subpoena. The Debtor made a proffer of sorts as to his own testimony and informed the Court that another witness was unavailable, that he "tried to get a hold of him for a week. I think he's working, flying, but I'll keep trying to get a hold of him." See Transcript of June Hearing, p. 36, lines 18-20. The Debtor further argued that permitting the witnesses under subpoena to testify about the sale without first ruling on the Settlement Agreement would be an undue burden on him because he intended to appeal the approval of the Settlement Agreement.

Both parties agree on one thing in this case – that the Settlement Agreement must be approved before the sale can go forward. Therefore, the Court continued the hearing on the proposed sale as well. The Debtor was admonished that "at the next hearing you best have all of your witnesses present. The Trustee seems to have a number of witnesses at each juncture and this is becoming burdensome to the witnesses... you've represented to the Court that you'll have

-11-

your witnesses here at the next hearing date, [at] any time other than August 3rd, during July and

August, so we expect that to happen."  *See* Transcript of June Hearing, p. 41, lines 8-14.

On July 21, 2005, the United States Trustee filed a Report for Hearing July 22, 2005 (the

"U.S. Trustee Report") [272].  According to the U.S. Trustee Report, Mr. Wolfe was examined

under Bankruptcy Rule 2004, and during that examination confirmed that he did sign the

rescission, but apparently had misunderstood the consequences of taking such action and that he

intends to go forward with the Settlement Agreement he reached previously with the Trustee.

        4.        July 22, 2005 Hearing

The fourth hearing was held July 22, 2005.  The following parties entered their

appearance:  the Debtor, Mr. Knowles, and Rand L. Gelber, Esq., special counsel for the

Trustee.[3]  The Trustee and Mr. Wolfe were also present.  Despite the Court's warning at the June

Hearing, the Debtor informed the Court that his witness was unavailable.

For almost five hours, the Court heard argument of counsel, testimony of witnesses Mr.

Wolfe, Mr. Andresen and the Trustee, and accepted ten of twelve exhibits into evidence, some of

which had not been shared between the parties before the hearing.  At approximately 4:00 p.m.,

Mr. Knowles and Mr. Wolfe asked to be excused during the proceeding regarding the proposed

sale of the Post Office Road Property because they had no stake in that proceeding and because

Mr. Wolfe needed to pick up his wife at the hospital.  Upon hearing this request, the Court

inquired whether any party would require the presence of Mr. Wolfe and his attorney in the

---

[3]    The Court notes that on July 22, 2005, the Trustee filed an Amended Application to Employ Special Counsel
[274] and that Mr. Gelber filed his Notice of Appearance and Request for Notice on the same date [275].  An Order
granting the amended application was entered on August 15, 2005 [286].  The Court also notes that it previously
authorized the employment of Mr. Gelber as Special Counsel to the Trustee by Order entered on November 18, 2003
[171].

courtroom.  The Debtor informed the Court that he would need Mr. Wolfe as a witness for about

an hour, therefore, the Court did not excuse Mr. Wolfe or Mr. Knowles.

      Almost four and a half hours into the hearing, after the Trustee had concluded his case in

chief in support of settlement and Mr. Andresen had closed his own case in opposition to thereto,

and during Mr. Andresen's cross-examination of the Trustee, who was called by Mr. Gelber on

rebuttal, and without ever calling Mr. Wolfe to testify, Mr. Andresen informed the Court that he

could not continue due to apparent ill effects of medication he had taken during an earlier recess.

In response, the Court continued the hearing to July 25, 2005 for the sole purpose of permitting

Mr. Andresen to finish his cross-examination of the Trustee and for the parties to make their

closing arguments.  All parties save Mr. Knowles indicated their willingness and ability to attend

the July 25 hearing.  Mr. Knowles was the only party unable to attend this continued date, and

was therefore permitted to make his closing argument out of order (with no objection by any

party).  Both the Trustee and the Debtor stated that Mr. Wolfe would no longer be needed to

complete their cases on the Settlement Agreement, and he was excused from attending the

continued hearing, unless otherwise properly brought before the Court.  Mr. Knowles noted that

Mr. Wolfe was not a party to the Sale Notice, and that his testimony would not be needed in

connection with that matter should it proceed at the continued hearing.  The Court admonished

the parties that if anyone needed Mr. Wolfe's testimony in connection with matters other than

the adversary proceeding to which he was a party, that he must be subpoenaed as a witness.

5.      July 25, 2005 Hearing

The fifth hearing occurred on July 25, 2005.  The following parties entered their

appearance: Mr. Gelber, the Debtor and Mr. Rosen.  Also present was Murray Gould, the

Trustees' real estate broker.  After the Debtor concluded his cross-examination of the Trustee

and all parties concluded their closing arguments, the Court ruled that the Settlement Agreement

would be approved and then called the Sale Notice.  The Debtor objected to going forward on

the Sale Notice because Mr. Wolfe and another witness were not present.  The Court reminded

the Debtor about the very last discussion on the record the previous day regarding Mr.Wolfe's

continued presence in the courtroom and the requirement of a subpoena.  The Debtor adamantly

disputed the Court's version of events.  As to the other unnamed witness, the Debtor stated that

he thought the witness may be in the hospital.  The Court noted his opposition, reminded him of

the previous instructions regarding his preparation for trial and directed the parties to go forward.

Substantial evidence and the arguments of counsel were presented in connection with the Sale

Notice and the Debtor's objection thereto.  Much of the evidence and argument in these matters

was overlapping.  The parties did not finish presenting their cases on this day and the Court

continued the hearing to July 26, 2005, thereby granting the Debtor's wish for more time.

6.      July 26, 2005 Hearing

On July 26, 2005, the Court held the sixth and final hearing.  Mr. Gelber, the Debtor, the

Trustee and Mr. Gold were present.  Mr. Andresen again raised his objections to the proceeding

based on the absence of his witnesses.  He stated on the record that Mr. Wolfe had not returned

"at least ten phone calls" and that he would like to locate Mr. Wolfe as he had promised to

attend.  He also stated that another witness, an individual he named "Mr. Johnson," was similarly

-14-

unavailable because he "might be in Florida."[4]  The Court again reminded him of the numerous

times the issue of witnesses had been addressed, and apparently ignored, and again, directed him

to proceed.  The parties finally concluded their presentations and gave brief closing argument.

## III.  LEGAL PRINCIPLES

A.    Standard for Granting Settlement or Compromise

Federal Bankruptcy Rule 9019 provides that the Court may approve a compromise or

settlement on motion by the trustee and after notice and a hearing.  Notice is to be given to all

creditors, the debtor, the United States Trustee and to any other entity as the court may direct.

Fed. R. Bankr. P. 9019(a).  Settlements are to be encouraged.  *U.S. v. Oncology Assoc., P.C. (In*

*re Equimed, Inc.)*, 269 B.R. 139, 149 (D. Md. 2001) (citing *In re Smith,* 210 B.R. 689, 692

(Bankr. D. Md. 1997)).  The proponent of the settlement bears the burden of proof that the

settlement is both reasonable and in the best interests of the estate.  *In re Frye*, 216 B.R. 166, 174

(Bankr. E.D. Va. 1997).

The bankruptcy court need not conduct a full evidentiary hearing on a motion for

approval of compromise or settlement.[5]  *See, e.g., DePoister v. Mary M. Holloway Found.*, 36 F.

3d 582 (7th cir. 1994); *In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. 493 (Bankr.

S.D.N.Y. 1991).  The following factors are relevant in deciding whether or not to approve a

settlement: (1) probability of success in litigation; (2) difficulties, if any, attendant to collection;

(3) complexity of litigation, including expense, inconvenience and delay attendant to the

---

[4]    The Court does not know whether "Mr. Johnson" is the previously unnamed witness who was "working, flying" on June 27, 2005, or possibly in the hospital on July 25, 2005 or maybe in Florida on July 26, 2005, but doubts that such a witness exists.

[5]    Obviously, the Court did hold a full evidentiary hearing in connection with these matters.  See Part III.C., *supra*.

litigation; and (4) paramount interest of creditors and proper deference to their reasonable views. *Id*. (citing *Protective Comm. For Indep. Stockholders of TMT Trailer Ferry, Inc., v. Anderson*, 390 U.S. 414, 424, 88 S. Ct. 1157 (1968)).  In making its decision, the court apprises itself of all facts necessary for an intelligent and objective opinion of the probable success should the claim be litigated.  *Id*.  The court also considers all other facts relevant to a full and fair assessment of the wisdom of the proposed settlement.  *Id*.  The essential inquiry is to determine whether the settlement reached by the parties is fair and equitable and in the best interests of the estate.  *Id*. at 150 (citing *Drexel Burnham Lambert, Inc. v. Flight Transp. Corp. (In re Flight Transp. Corp. Sec. Litig.)*, 730 F. 2d 1128, 1135 (8th Cir. 1984)).

B.      Standard for Approving a Sale of Property of the Estate

A Chapter 7 trustee has a duty to collect and reduce to money assets of the estate for distribution to creditors.  11 U.S.C. § 704(1).  To that end, the trustee may sell property of the estate out of the ordinary course of business.  Property of the estate consists of all legal or equitable interests of the debtor in property as of the petition date.  11 U.S.C. § 541(a).  The Debtor's prepetition partnership interests are assets of the estate.  *Beaman v. Shearin (In re Shearin)*, 224 F. 3d 346, 352 (4th Cir. 2000).

Section 363(b) of the Bankruptcy Code permits a trustee to sell property of the estate other than in the ordinary course of business.  11 U.S.C. § 363(b).  Property may be sold free and clear of any interest in such property if: (1) applicable nonbankruptcy law permits it; (2) the entity claiming an interest in the property consents to the sale; (3) such interest is a lien and the price at which the property is to be sold is greater than the aggregate value of all liens thereon;

(4) such interest is in bona fide dispute; or (5) such entity could be compelled, in a legal or equitable proceeding, to accept money satisfaction of its interest.  11 U.S.C.§ 363(f).

In deciding whether or not to approve a sale, the bankruptcy court considers whether: (1) a sound business purpose exists for the sale; (2) adequate and reasonable notice has been given to interest parties; (3) the trustee has obtained a fair and reasonable price for the property to be sold; and (4) the sale was negotiated in good faith.  *In re WBQ Partnership*, 189 B.R. 97, 102 (Bankr. E.D. Va. 1995) (citing *In re Delaware & Hudson Railroad Co.*, 124 B.R. 169, 176 (D. Del. 1991).

C.    Debtor's Standing to Object to the Settlement Agreement and Sale Notice

Generally, a party has standing to bring suit against another if he can demonstrate the following factors: (1) that he has suffered a concrete and actual harm (i.e, injury in fact), or that such harm is imminent; (2) a fairly traceable connection or causation between his injury and the conduct of the defendant; and (3) likelihood that his injury can be redressed by the relief he seeks.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136 (1992).  In a bankruptcy context, and in particular, a chapter 7 case, the trustee is the representative of the estate and the only party with standing to bring suit.  *Richman v. First Woman's Bank (In re Richman)*, 104 F. 3d 654, 657 (4th Cir. 1997).  The purpose of narrowing standing in this context is to prevent protracted litigation that does not serve the estate or creditors.  *Id*.

Parties who are not original parties to the lawsuit may nonetheless qualify as "parties in interest," and therefore have standing to oppose a proposed course of action, but they must formally intervene in order to participate in an adversary proceeding.  *Id*. at 658.  The party

-17-

seeking to intervene bears the burden of proof that he has the right to do so.  *Id.* (citing *In re Kaiser Steel Corp.*, 998 F. 2d 738, 790 (10th Cir. 1993)).

Rule 7024 of the Federal Rules of Bankruptcy Procedure sets out the requirements for intervention:

> (a) Intervention of Right.  Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the Unites States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

> (b) Permissive Intervention.  Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common... [i]n exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

Fed. R. Bankr. Proc. 7024.

## IV.    DISCUSSION AND CONCLUSION

A.    The Trustee is Authorized to Settle the Adversary Proceeding with Mr. Wolfe

Based on the evidence presented, the Court finds that Mr. Wolfe does have some interest in Absecon Assocates and LH Enterprises, LLC that he is free to transfer to the Trustee as part of the Settlement Agreement.  Mr. Wolfe seems to be confused as to what he holds, but the Court doubts that Mr. Andresen has made his business arrangements very clear to Mr. Wolfe.  However, the Court also finds that it does not matter because Mr. Wolfe has only agreed to transfer his interests, if any, whatever those interests may be.  It may turn out that he has none, but at this point the Trustee believes he does and so does this Court, and such finding is not

-18-

necessary to the Court's ruling to approve the Settlement Agreement.  In any event, the Settlement Agreement only calls for Mr. Wolfe to transfer whatever he has and nothing more.

The Court further finds that the Debtor is not an original party to the lawsuit nor is he a party to the Settlement Agreement.  He has not formally requested intervention as a "party in interest" pursuant to Bankruptcy Rule 7024.  Even if he had complied with the procedural requirements, the Court finds that he has no interest in the property or transaction that is the subject of the instant adversary proceeding.  Mr. Wolfe is not transferring any interest of the Debtor in settling this litigation.  Nonetheless, the Debtor was heard fully and had is day in court.        In addition, various points made by the Debtor in his presentation of evidence and argument are deemed not relevant by the Court.  These points include:

1.    The Debtor alleges that Mr. Knowles was supposed to have been working for him as counsel, but was not.  The Debtor maintains that he paid Mr. Kowles, although it appears to the Court that the Debtor maintains that he paid Mr. Knowles to act <u>for</u> Mr. Wolfe. The Court finds this allegation to be of no moment.  Mr. Knowles entered his appearance and at all times acted as Mr. Wolfe's counsel.

2.    The Debtor alleges that the Trustee claims not to have known anything about the sale of property adjacent to the Post Office Road Property.  The Court finds that this allegation is irrelevant.

3.    The Debtor alleges that this proceeding affects other people who have not been notified of the Settlement Agreement.  The Court is aware of no party entitled to receive notice in this bankruptcy matter who has not received it.

-19-

The Debtor has not substantiated his allegations that the Trustee, alone or in cahoots with Mr. Knowles, engaged in fraudulent and deceptive conduct in procuring the Settlement Agreement from Mr. Wolfe.  The Debtor has presented no evidence whatsoever that the Trustee or anyone else engaged in wrongful behavior.  No representative of the United States Trustee's office (the "Trustee's selecting body)  has sought the Trustee's removal or has begun an investigation into any alleged wrongdoing.[6]

The Court finds that the Debtor is not credible and is schooled in obfuscation and delay. He has had ample opportunity to come forward with witnesses or other evidence to support his allegations.  The Debtor simply has not substantiated his objection – that he has suffered harm as a consequence of a settlement to which he is not a party and in which he has no stake.  He has not demonstrated (and there is testimony to the contrary) that <u>his</u> "partnership was conveyed away as part of this deal."  *See* Transcript of April Hearing, *passim*.  Only Mr. Wolfe's interests, <u>if</u> <u>any</u>, are being transferred under the Settlement Agreement.

The Court further finds that the Settlement Agreement is fair and reasonable and in the best interests of creditors.  It is possible that the Trustee might successfully litigate this matter and obtain judgment against Mr. Wolfe, but the Trustee has determined in his judgment that settlement will achieve a better result for creditors.  The lawsuit is not complex, but the expenses are only mounting as the Debtor continues to thwart the Trustee's efforts to administer assets of

---

[6]    Removal of a trustee is governed by Section 324(a) of the Bankruptcy Code and requires a showing of "cause." 11 U.S.C. § 324(a).  Cause usually involves intentional misconduct or negligence on the part of a trustee in the administration of the estate, or a conflict of interest.  *Mobile Diagnostech, Inc. v. Cohen (In re Equimed, Inc.)*, 267 B.R. 530, 533 (D. Md. 2001).  A trustee is granted complete authority and discretion in the prosecution of litigation involving a debtor's estate, and removal is not warranted in cases of error in judgment so long as that judgment was reasonable and discretionary.  *Id*. at 534.  The Debtor has not filed a motion to remove the Trustee, but because he has repeatedly made unsupported allegations that the Trustee or his representatives have destroyed the Debtor's property and have acted fraudulently in some manner, the Court feels compelled to mention that the Debtor has failed to satisfy this standard.

the estate.  It appears to the Court that creditors are better served by settlement of this adversary

proceeding on the terms proposed in the Trustees' Motion.

B.      The Trustee is Authorized to Sell the Post Office Road Property

As stated herein, the Court finds that Mr. Wolfe does have some interest in Absecon

Associates that he is free to transfer to the Trustee as part of the Settlement Agreement.  The

transfer gave the trustee all the partnership interests in Absecon Associates.  He is therefore

entitled to sell the Post Office Road Property.  While reducing partnership interests to money,

either by selling the interest itself or by liquidating its assets can be an issue when other non-

debtor partners are involved, this has been resolved by the Trustee through settlement with Mr.

Wolfe.  The Debtor continues to assert, despite evidence and testimony to the contrary, that his

"partnership was conveyed away as part of this deal."  However, the Debtor has apparently

forgotten that he filed bankruptcy, and as a consequence, all of his legal and equitable interests in

property, including any partnership interests, became property of the estate.  The Court also

notes that the Debtor has not claimed any exemption in partnership interests or in the Post Office

Road Property.  The Trustee is therefore now in control and is obligated to reduce to money

property of the estate.

The Court further finds that the Trustee has  proposed sale of the Post Office Road

Property is fair and reasonable and in the best interests of creditors, that the evidence supports

sound business reasons for the sale and that the sale was negotiated in good faith.  The Court

further finds that notice of the proposed sale to interested parties was adequate and proper under

the circumstances, despite the Debtor's protestations to the contrary.[7]  Moreover, the Trustee

---

[7]      The Debtor will undoubtedly argue on appeal (and he has affirmatively stated, even before the Court held its
final hearing on the matter, that he intends to appeal) that Lori Hall is a partner of Absecon or an owner of the
property, or that she is somehow involved in this transaction, however, both sets of bankruptcy schedules from 2000

-21-

may sell the Post Office Road Property free and clear of other interests thereon pursuant to Section 363(f) of the Bankruptcy Code. The only other interest in this property is held by Eastern Savings Bank, the mortgage holder ("Eastern"). As stated on the record, Eastern has obtained relief from the automatic stay and intends to foreclose of the Sale Notice is not approved. If approved, the sale would provide payment in full to Eastern as well as a distribution to creditors, and therefore the Court finds that the Trustee has satisfied the requirements of Section 363.

The Court makes one final note. Great deference and due regard was given to the Debtor given his pro se status,[8] and extended hearings were held in order to permit him to articulate his claim of standing, his objections to the Settlement Agreement, the Sale Notice, and to present evidence in support of his objections. The Court provided a great deal of latitude to the Debtor, despite repeated assertions by the Trustee and Mr. Knowles that the Debtor lacks standing in either matter. The Court agrees that the Debtor has no standing, but, in short, gave him his day in court. At the close of his case, the Debtor presented absolutely no evidence to substantiate his claims of standing, of harm to himself, and of wrongdoing by the Trustee, and he also presented no evidence that the Settlement Agreement or that the sale of the Post Office Road Property should not be approved.

For the foregoing reasons, the Court will approve the Settlement Agreement and will also approve the sale of the Post Office Road Property. Appropriate Orders will be issued.

---

and 2003, as well as the 2001 transfer to Mr. Wolfe, refute these assertions. The Debtor never produced any evidence, through testimony or otherwise, that Ms. Hall is involved in this matter.

[8]    The Court notes that Mr. Andresen has legal training, and, in fact, was a lawyer who was disbarred. The Court also notes that he has appeared numerous times in proceedings before the Bankruptcy Court since 2001. He was involved in the bankruptcy case of LH Enterprises, LLC in 2001 and 2002. *See* Case No. 01-16741. Mr. Andresen does not appear to the Court to be the typical *pro se* debtor, or, for that matter to be an inexperienced advocate.

cc:    Gary A. Rosen, Trustee
        Rand Gelber, Esq., counsel for the Trustee
        Peter C. Andresen, Debtor
        Don M. Wolfe
        Dean Knowles, Esq., counsel for Mr. Wolfe
        U.S. Trustee